# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT,

## APRIL TERM, 1868.

## WILLIAM L. PERKINS *v.* THE OPHIR SILVER MINING COMPANY.

CONSTRUCTION OF CONTRACT TO RECEIVE AND FORWARD FREIGHT.—By a written agreement, O. agreed with P. to consign to P., at S., all his freight intended to be transported to N. T. "during this Summer and Fall, amounting, it is now supposed, to about one thousand tons, and will deliver it to him from time to time in such quantities that at least twenty-five per cent of the whole freight shall be delivered to him during each and every month from the first day of July next." P. agreed with O. that he would receive at S., and transport to N. T., at a price specified, all the freight that O. should consign to him at S. before October 31st. *Held,* that O. was bound by the contract to consign to P., at S., all his freight, regardless of its quantity, intended to be transported to N. T. during the "Summer and Fall" specified, and in such proportions as to equal twenty-five per cent of the whole amount during each month from July to October, both inclusive.

CONTRACT, WHEN NOT CHANGED BY SUBSEQUENT AGREEMENT.—Where a contract in writing was duly executed between O., a corporation, and P., for the trans-portation of the freight of O., and after part completion of the contract by P., the President and Secretary of O. promised P. to allow him different and better terms of payment for its completion than the contract terms, but without any authority from O. shown therefor, by which promise, however, P. was not prejudiced, or induced to vary from a strict fulfillment of the contract; *Held,* that thereby the terms of the contract were not affected, and that P., in an action against O. for its fulfillment, could not recover except in accordance with its terms.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

This was an action to recover for the transportation of certain freight for defendant, alleged to be in excess of the requirements of the written contract entered into between the parties on the subject of the transportation of freight by plaintiff for defendant. The complaint was in the usual form in actions for services rendered and money advanced. The answer set up the written contract between the parties, the substantial portions of which are stated in the opinion of the Court, as embracing the subject matter of the demand in suit, and alleged a full compliance with its terms, as to payment, by defendant.

On the trial plaintiff proved that between the dates prescribed in said written contract he, at defendant's request, transported eight hundred and forty-five thousand nine hundred and eighty-nine pounds of defendant's freight from Sacramento City to Nevada Territory, in excess of the one thousand tons of freight mentioned in said contract, and that the actual cost to plaintiff of such transportation, over and above the sum of five cents per pound also mentioned in said contract, was the sum of eight thousand two hundred and seventy dollars.

The following were part of the findings of fact and the conclusions of law made by the Court below, and the proceedings there taken in respect to certain portions of said findings :

"First—That on the 1st day of June, 1862, defendant was and ever since has been a corporation.

    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Eleventh—That William Blanding was President of the Ophir Silver Mining Company, (defendant,) from June 16th to December 10th, 1862, and J. W. White was Secretary during the same period.

"Twelfth—That after plaintiff had forwarded and trans-

ported one thousand tons of freight of defendant as afore-
said, defendant, through its President and Secretary, in the
months of September and October, 1862, urged plaintiff to
forward the said excess without delay; and when so urging,
the said President and Secretary knew that plaintiff was
compelled to pay and was paying an increased price over
and above five cents per pound for forwarding the same.

"Thirteenth—That prior to the commencement of this
action the defendant paid to plaintiff for all freight trans-
ported by him a sum equal to five cents per pound, and such
payment was made by accepting orders and drafts of plain-
tiff drawn on defendant for the whole quantity of freight
transported by him, at five cents per pound.

"Fourteenth—The plaintiff's commission, at two per cent
on the money paid out by him for transporting said excess
of freight over one thousand tons, would amount, at one dol-
lar and fifty cents per ton, to one thousand and eleven dollars
and seventeen cents, and said percentage was the customary
and usual charge of forwarders on that route for receiving
and forwarding freight, and making advances to pay team-
sters.

"Fifteenth—The plaintiff paid out for transporting a
portion of said excess from Sacramento to Placerville and
Folsom the further sum of four hundred and seventy-six dol-
lars and eighteen cents, and in paying drayage on portions
thereof from the levee at Sacramento to the Sacramento
Valley Railroad cars, to be forwarded to Folsom, *en route* for
its destination, the sum of eighteen dollars and fourteen
cents.

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*

"Seventeenth—That frieghts advanced on the route from
Sacramento to Virginia City and defendant's said mills,
between the time when plaintiff had transported one thou-
sand tons of said freight and the time when he had fully
transported said excess, from one and three quarters to three
and a half cents per pound, owing to storms, etc.

"Eighteenth—That on the 5th day of October, 1862, at

Folsom, California, the defendant's said President, William Blanding, Esq., directed plaintiff to go on and forward all of defendant's freight as fast as possible, at the same time saying to plaintiff 'the company (defendant) would do what was right about it;' and at the time of making such remark and giving such direction said Blanding had notice that freights between Folsom and defendant's mill and Virginia had advanced to seven cents per pound."

" Nineteenth—That at an interview between plaintiff and said Blanding, at the office of defendant, October 14th, 1862, plaintiff notified said Blanding that for transporting any excess over one thousand tons of freight for defendant, he should claim and expect to receive a compensation beyond five cents per pound; that upon receiving such notice, said Blanding replied to plaintiff: 'Go on and forward all our freight as fast as possible, and the company will do what is right; you will have no difficulty in settling with the company.' "

[The twelfth, seventeenth, eighteenth, and nineteenth findings were all stricken out, on motion of defendant, after affidavit and notice, by the Judge, after signing and filing, to which the plaintiff excepted.]

"And as conclusions of law, I find that plaintiff paid, laid out, and expended all of said money and rendered and performed all of said services in forwarding said freight, etc., under and in pursuance of the written agreement, a copy of which is set out in defendant's answer, and he is not entitled to recover therefor, and there is nothing due from defendant to plaintiff upon any of the causes of action set out in plaintiff's complaint, or by reason of any of the facts aforesaid."

Judgment passed for defendant, and plaintiff moved for a new trial, which was denied, and appealed from the judgment and order denying a new trial.

The other facts are stated in the opinion of the Court.

*Patterson, Wallace & Stow*, for Appellant.

Plaintiff's contract was to receive and transport one thousand tons. It was specified that twenty-five per cent should be delivered in each of the months of July, August, September, and October. This was a reasonable contract. The terms "amounting, it is now supposed, to about one thousand tons," were inserted with a design. The quantity was not to exceed that amount. These terms are not repugnant to any others contained in the contract, and some effect was intended and should be given to them; yet, except they receive the construction as claimed by us, they are effectually excluded from the contract, which thereby suffers mutilation in a material part. (*Bourne* v. *Seymour*, 81 Eng. Com. Law, 336; *Cross* v. *Eglin*, 2 B. & A. 106; *Cutts* v. *King*, 5 Greenl. 420; *United States* v. *Fossatt*, 20 How. 413; *Hoff* v. *Baum*, 21 Cal. 120; *Merrill* v. *Ithica and Oswego Railroad Company*, 16 Wend. 586.)

On this appeal the case must be determined upon the findings as signed and filed October 30th, and not as subsequently amended. (Practice Act, Sec. 180.)

Had defendant been dissatisfied with the findings, the remedy was by exception. (Statutes of 1861, p. 581.)

After having signed and filed findings, the Judge had no power to alter or modify the same except by having his attention called thereto by specific exceptions.

*H. & C. McAllister*, for Respondent.

The contract was correctly construed by the Court below. (*Saunders* v. *Clark*, 29 Cal. 304; *Bradley* v. *Washington A. & G. S. P. Co.*, 13 Pet. 97; *Nash* v. *Towne*, 5 Wall. U. S. 699; *Selway* v. *Fogg*, 3 Mees & Wels. 83; *Nesbit* v. *Railroad Company*, 2 Speers, S. C., 698; *Colcock* v. *The S. C. & C. R. R. Co.*, 1 Strobh. Law, 333; *Miller* v. *McCaffrey*, 9 Barr, Pa. State, 426; *Jones* v. *Dermot*, 9 Wall. U. S. 1; *Stanley* v. *Green*, 12 Cal. 163; *Collyer* v. *Collins*, 17 Abb. Pr. 467.)

But were the freight over a thousand tons considered to be extra, the law is settled that recovery for its transportation could only be had according to the contract price in absence of an express agreement to the contrary. (*Priestly* v. *DeBoom*, 1 Cal. 207; *Nicholson* v. *Patchin*, 5 Cal. 474; *Reynolds* v. *Jorden*, 6 Cal. 111; *Adams* v. *Pught*, 7 Cal. 150; *O'Connor* v. *Dingley*, 26 Cal. 12; *Smith* v. *Smith*, 1 Sandf. 208; *Laduc* v. *Seymour*, 24 Wend. 60; *Gleason* v. *Smith*, 9 Cush. 484; *White* v. *Oliver*, 36 Me. 92; *Walker* v. *Brown*, 28 Ill. 378; *Evans* v. *R. I. R. R. Co.*, 26 Ill. 189; *Brogham* v. *Hawley*, 17 Ill. 38; *Folliot* v. *Hunt*, 21 Ill. 655; *Holmes* v. *Hammond*, 24 Ill. 370; *Springdale C. A.* v. *Smith*, 24 Ill. 480.)

There was no error in the Court correcting its findings. It is only where final judgment has been entered and the term of the Court has expired, that the power of the Court to correct errors or omissions is exhausted. (*Branger* v. *Chevalier*, 9 Cal. 352.)


By the Court, SPRAGUE, J.:

The rights of the parties involved in this suit must be determined by the terms of their written contract of June 25th, 1862, and the only point necessary to determine the controversy is involved in the question whether, by the terms of that contract the plaintiff stipulated to receive at Sacramento all the freight consigned to him at that point by defendant, after making the contract and before November, 1862, and forward and deliver the same with usual dispatch to defendant at Virginia City and Washoe Valley, at five cents per pound, or stipulated to receive at Sacramento, forward and deliver to defendant at the above named places an amount of freight not exceeding one thousand tons, for the price and compensation per pound named in the agreement.

The portions of the contract evidencing the intent and meaning of the parties thereto, so far as relates to this question, are as follows:

"The said company hereby agrees with said Perkins that they will consign to him at Sacramento all their freight intended to be transported to Nevada Territory during this Summer and Fall, amounting, it is now supposed, to about one thousand tons, and will deliver it to him from time to time in such quantities that at least twenty-five per cent of the whole freight shall be delivered to him during each and every month from the first day of July next. And the said William L. Perkins agrees with the said company that he shall and will receive at the levee in Sacramento all such freight as the company may consign and deliver to him on or before the 31st day of October next, and shall and will, with all reasonable and the usual dispatch, forward the same, and deliver in like good order as received, at the company's mine, in Virginia City, or at their mills in Washoe Valley, as he shall be instructed to do. And the said company agree with said Perkins to pay him five cents per pound for all freight received by him and delivered at the mine at Virginia City, or the mills in Washoe Valley."

It is not claimed but that this agreement was fairly made, and the intent and meaning of the parties thereto fully expressed by its terms; nor was any attempt made at the trial to show by extrinsic evidence as to the subject matter of the contract, or attendant surrounding circumstances of the parties, that any other meaning should be attached to the words and terms employed than such as their literal sense implies.

But appellant insists .that by the terms of the contract plaintiff stipulated to transport and deliver to defendant an amount of freight not exceeding one thousand tons, at five cents per pound, and respondent insists that by the terms of the contract defendant agreed to deliver to plaintiff, at Sacramento, all their freight, and plaintiff undertook and agreed to forward to the points specified, and deliver all such freight as defendant should consign and deliver to him at Sacra-

mento on or before the 31st day of October, 1862, for five cents per pound.

It is very evident from the plain and simple tenor of the contract that respondent was bound thereby to consign and deliver to appellant, at Sacramento, thereafter "all their (its) freight intended to be transported to Nevada Territory during that Summer and Fall," and to so deliver to appellant, at Sacramento, twenty-five per cent of such freight in each of the months of July, August, September, and October, 1862, and appellant was bound to "receive, at the levee in Sacramento, all such freight as the said company might (thereafter) consign and deliver to him on or before the 31st day of October, 1862," and forward and deliver the same, "with all reasonable and the usual dispatch," at the company's mine in Virginia City, or at their mills in Washoe Valley, as he should be instructed by the company, in consideration of five cents per pound, to be paid him by the company. The words "amounting, it is now supposed, to about one thousand tons," as used in respondent's covenant to consign and deliver to appellant, at Sacramento, "all its freight intended to be transported to Nevada Territory," taken in connection with appellant's covenant to "receive, at the levee in Sacramento, all such freight as the said company may consign and deliver to him on or before the thirty-first day of October," cannot be understood as limiting or controlling the quantity which respondent was bound to consign and deliver, or which appellant was bound to receive and forward. By the terms and evident import and meaning of these mutual covenants, respondent was bound to consign and deliver to appellant, at Sacramento, on or before the 31st day of October, 1862, all its freight intended to be transported to Nevada Territory during the Summer and Fall after the date of the contract, whether the quantity should be two hundred or two thousand tons. And appellant was bound to receive, at the levee in Sacramento, all such freight as respondent should so consign and deliver to him on or before the 31st day of October, 1862, and forward and deliver the

same, with all reasonable and usual dispatch, at the points indicated in Nevada Territory, in consideration of five cents per pound, which respondent was bound to pay in consideration of such receipt, forwarding, and delivery by appellant. Had all of respondent's freight for Nevada Territory during the Summer and Fall, 1862, after the date of the contract, amounted to but five hundred tons, and this had been consigned and delivered to appellant at Sacramento on or before October thirty-first, and he had received, forwarded, and delivered the same at respondent's mine and mills in Nevada Territory, and had been paid therefor by respondent the stipulated rate of five cents per pound, it would hardly be contended that respondent would be responsible in damages to appellant under this contract for non-compliance with its terms, in failing to deliver one thousand tons.    But had respondent's freight to Nevada, during the same period, amounted to fifteen hundred tons, and it had consigned and delivered to appellant one thousand tons, on or before October thirty-first, which he transported to Nevada, and to other parties five hundred tons, who received and transported the same to Nevada for four cents per pound, appellant, through his learned counsel, would very likely, and we think for sufficient cause, be seeking redress in an action against respondent for a breach of its covenants in this contract. The manifest intention of the parties, at the time of executing the contract, was that respondent should consign to appellant, for transportation from Sacramento to Nevada, all its freight during the remainder of that season, be the same more or less, and pay to him for such transportation five cents per pound, and that appellant should receive, transport, and deliver, at the points indicated, all the freight so consigned to him, be the same more or less, at the stipulated rate of five cents per pound.   " All the freight" are the controlling words in the covenants of each party to the contract, as to quantity; and clearly evidence the intention and meaning of both parties thereto.   The facts, as originally found by the Court, including the twelfth, seventeenth, eighteenth,

and nineteenth findings, which were stricken out on notice and motion of respondent prior to judgment, we think were fully sufficient to justify the conclusions of law based thereon, and entitle respondent to judgment; hence, if it were error for the Court to strike out and endeavor to correct its findings in the mode adopted, (as to which no opinion is expressed,) appellant is not prejudiced thereby.

Although, in the absence of a written agreement between the parties covering the whole subject matter, the facts contained in the twelfth, seventeenth, eighteenth, and nineteenth findings would doubtless be sufficient to charge respondent with the actual value of the services rendered and advances made by appellant on account of its freight forwarded and delivered by him subsequent to October 14th, yet, in view of the existence of such written agreement, the facts found do not establish a new oral contract, nor a modification or alteration of such original written agreement in reference to the same, or any portion of the same subject matter. It nowhere appears that the President of the corporation was authorized to enter into any agreement, or consent to any arrangement with appellant, modifying, or in any particular changing the terms of the original agreement in writing, deliberately made and formally executed by the parties thereto; nor does it appear that on account of anything said or done by the President, Secretary, or other officer or agent of the corporation, appellant was in any manner prejudiced or induced to vary from a strict compliance with his obligations, voluntarily assumed on his execution of the original written agreement.

Judgment affirmed.

Mr. Justice Rhodes expressed no opinion.